May it please the court, Cynthia Hahn for Esparza-Gonzalez, the appellant. Now this case involved what is known as the struck jury method. In other words, when you waive a peremptory, a juror is struck. And that's how you get down to your 12 jurors. You have 28 for your main jurors and then 4 for your alternates. The appellants have 6 strikes, 10 strikes. The government has 6 strikes on the main jury venire. And on the alternates, each have 1. So let's assume in that scenario, just if I can boil it down and so focus your argument. Sure. The effect of waiving in this case has an affirmative effect of striking the last juror. And the last juror apparently is a known, because everybody's numbered in the venire. Yes. Is that it? Yes. Okay, or in the pool. So if I'm the prosecutor, I can waive here knowing that I will strike somebody who's at the end. Yes. Okay, now, this strike happened after exercising 1 peremptory, isn't that right, by the prosecutor? Yes. And then he waived. And then he waived. As to all the rest. What is the logical? Okay. All right. Isn't that right? Well, he waived 1. And then the court said to him, and a Batson challenge was made. And then the court said to him, well, what is your explanation? And he said, I'm willing to accept it. He said, oh, well, I'm just going to waive them all. Yeah. So why isn't that a race-neutral argument right there? I'm taking the panel. Because, well, the court, I guess, has dealt with this prosecutor many times, and the court specifically. But as a general proposition, I mean, why is that on its face, not a race-neutral reason? A reason. What else would the prosecutor say? I mean, when you waive your peremptories, you're basically saying I'm willing to take the jury as presently constituted. Yes. So now. So does that, therefore, provide sort of jumping over the prima facie showing? I'm trying to figure out where we fit under Batson, because that on its face seems to be a race-neutral reason. Now, there was a Batson objection. Yes. Because it so happened, or it not so happened, it was a fact, that the struck juror out of that group, which was seated in the box. Is that right? Right. The 12 jurors were in the box. So did it take a juror out of the box? Well, what happens is when you waive the peremptory, the clerk strikes the last juror. The last juror, but, see, they're the alternate. So I'm trying to figure out how this works physically. First you go for the first 12 out of 28. Okay. But the 12 were in the box? I wasn't there. I don't know. I wasn't the trial attorney. Okay. But, see, I'm trying to figure out how it works, because if there are 12 in the box and I waive from the get-go or after exercising one, and I know I'm in effect striking a minority by doing that, that's one thing. If there's somebody outside the box, is there 12 in the box and you're going through? I wouldn't know, but you would still know, because as they're called in order, that's the first one is 1, 2, 3, 4. Yeah, I understand that. Okay. Okay. So everybody knows who juror 28 is. I'm just trying to figure out, if I'm waiving after my first peremptory, what is the rest of the jury? Who are the – what is the jury I think I'm getting at that point? Are they sitting, the first 12, right? Or the 12 who are – I don't know where physically in the courtroom they are sitting. But I know that my jury is – Out of those people. Out of that group. Yes. Okay. So I know. But as I understand it, the juror who was struck was not number 12 or 13. It was at the – it was number 28. So how do – Right. That's how it works. Yeah, I understand. I'm trying to see how to – where's the prima facie case in this, then? Well, if – I would argue – okay. The prima facie case is everybody knew the last juror was a Hispanic. Right. Number 28. Number 28. Okay. Everybody knew that if you waived, the clerk directly struck the last juror, which would have been Ms. Martinez. Sure. But to reach that juror, I would have had to not only keep going. I would have had, as prosecutor, exercise all my peremptories before 28 even became relevant for the panel. Isn't that right? Well, that's part of the purpose of my argument, is that the judge did see a problem with it, and he did render a decision. So now, under the Supreme Court and the First through Tenth Circuits, you cannot go back and visit whether that – a prima facie case was made. Okay. So now we assume it's a prima facie case. Well, we're past that point.  So we – right. So now we – I'm trying to – but we're speaking to the structury system. I'm just trying to understand the structure of this case would have implications not for just this case. So I'm trying to understand what happens then. The judge said and consulted Arizona law, there has to be more. There has to be something more. And you say the something more in this case was judicial notice and the fact that there was the Hispanic juror who was struck. Well, yes. State v. Palaio calls it waiver plus. Right. But they also said those of a mind to discriminate can very easily manipulate the rules to prevent the seating of a minority. He wasn't taking a chance on seating a minority juror is what was happening. Okay. That's what – that's the allegation. Yes. Now what happens? Let's suppose we agree with you and this case goes back. What is the remedy at this point? What happens? Well, this is structural error. It can't be – you can't really say once the jury pool has been polluted what would have happened at trial. So it's structural error under Arizona v. Fulminante, and it has to go back for a new trial. Okay. Let's suppose we have the same situation, though. What would the judge have done then? The judge would have said, okay, you're saying we should find, based on these facts, that there was a prima facie case. Now the prosecutor comes back and says, the reason I struck or waived was simply I'm willing to accept the panel as it exists. That's a race-neutral reason, is it not? Is that a race-neutral reason? So are we on now? I didn't think so because the judge knows that prosecutor. And he said, look it, I've had you in this court a number of times and you've never done this before. And he took judicial notice. He says, I can take judicial notice of the fact that you never do this. And because of that, I don't find – basically what he said is I don't find your reasoning credible. And that is – Don't you have a stronger argument when he struck the second? Pardon me? Don't you have even a stronger argument with respect to Juror Lopez? Oh, yes. And that was because it was the second Hispanic. The second time. He did it again. He was not. He did it again. Help me understand mechanically how it worked to get rid of the second prospective juror, Lopez, who was an – or would have been an alternative, an alternate juror. There were four prospective alternate jurors. That's right. And at this point, what had already happened? We'd already selected the primary jurors? Yes. Those were already selected out of 28. I knew I should have made a chart for this. That's okay. It would have been easier to understand. I'll try to follow. No, it's okay. And then for the alternates, you have four jurors to pick from, each side getting one strike, one peremptory. And it turns out Lopez has the highest number? No, the lowest. The lowest. So when the prosecutor and the government waived again, again, the last juror was struck, who was Mr. Lopez. Oh. But I thought it was the highest number that got struck when you waived. Well, I mean the last juror. So it would have been number four, the highest. Right. Correct. Okay. So the same thing happened. As it turns out, Martinez had the number 28 and Lopez had the number four. And by waiving peremptories, that had the consequence. Intent is a different question. But that had the consequence of striking the two Latinos. Correct. Judge Fischer was asking this question, and I'm not yet sure I fully understood the answer. Okay. What was the chance of Ms. Martinez, number 28, actually getting on the jury, given that she was number 28? 28? Well, see, that's the thing, is our side did use the ten peremptories. How many peremptories did each side have? Pardon me? How many peremptories? Our side had ten. The government had six. For the main pool, main jury pool, out of the 28. So a total of 16, and there were 28 people up there. And if all peremptories had been used, we would have got to 28. We would have gotten to 12, yes. And if there had been for cause, we would have got there sooner. Yes. Okay. And I'm going to say that. Are you saying your side did exercise ten peremptories? Yes, we did. So what, did they kept waiving after each? No. He just got up and said yes, right, exactly. He would get up and say I waive, I waive. Because he had already told the judge he was going to waive. And so why did you use your ten peremptories? Because you wanted to get to 28? Your answer better be no. I cannot speculate on what the trial attorney had in mind. Okay. Anyway, I'm going to save my two minutes of our time. Listen, we'll make sure we hear. I'm not sure if we need to hear from you. So we'll give you some time. Thank you. Sure. Once again, may it please the Court, I'm Ron Rasho. I was the trial attorney in this. I was the one that innocently said I waive, I'll take, and then the world came down on me. And I really don't know how I ended up in this particular situation. It was a routine 1326 illegal reentry case. We're getting ready to go to trial. They wanted a trial. It generally takes about an hour. My general philosophy is put 12 in a box and let's go. My facts will carry. In this particular case, each side would have had to exercise all of their preemptory challenges to ever get to number 28. I sit here and I still wonder about what I'm supposed to do. I'm supposed to challenge other people so that the defense can get a juror that they may want. People that are perfectly qualified to be jurors, wouldn't I be bumping those off when they're perfectly qualified to be a juror? No. Oh, excuse me. Go ahead. The structury system is an unusual system, but assuming we have to accept it as it is, how can there ever be an effective Batson challenge under your theory? If you waive and you waive and you waive, the last four are all Hispanic and you have an Hispanic defendant. And then you end up with no Hispanic again. How does one make a Batson challenge under the structury system? Well, I think the Arizona court addressed it in Palo, and the trial judge below came out and said it has to be something more than just a waiver. And you can see from the excerpts of the record, the trial judge gave the defense every opportunity to try to present any evidence to put it on, and they had no evidence. They couldn't. The evidence was that of race. And I take it that doesn't make a prima facie case under your theory. What could make, how could you effectuate a Batson challenge? What else would be required other than you're striking, by not exercising your peremptory you're giving, you're making sure that no Hispanic gets on the jury. Any system is always subject to abuse. But there's got to be some factual basis for it. In this particular case, 28 could have been anyone. It could have been a white male. It could have been a black female. It could have been an Oriental. It could have been, but at the time you said I waive my peremptories, you knew in fact that this was an Hispanic, correct? I knew it was a person with a Hispanic name. That's what I'm trying, a person with a Hispanic last name. Correct. So it could have been anything, but at the time you made the challenge, you knew in fact what it was. I also knew by waiving that I was also waiving the next four that sat in line when I'm waiving five peremptory challenges, none of which were minorities. When the judge said, well, okay, but I'm going to keep Ms. Martinez and I'm going to actually strike 27, you objected. Why? Because we came in under a system of a blind draw. And if he jumped over, he is violating Batson because Batson says you can't select a jury per se. Can the judge violate Batson? The judge could make an incorrect ruling that would be contrary to Batson, which we would be stuck with. But if you didn't care, why did you object? Because he was going outside the system. And to be honest with you, it was emotional reaction also that I'd been attacked, in effect being called a racist when I was just trying to get the trial going. Now, the only question that's in front of us now is not whether there was a Batson violation. But as I understand the case in its current posture is, was there a prima facie case, which is a term of art, triggering your getting to explain yourself? You don't think there's enough that the judge should have been allowed to ask you to explain yourself? I'll tell you flat out there was not a prima facie case, Your Honor. All I did was wave a challenge, and the trial judge in it kind of made a seat-of-the-pants ruling. And then it got a little more heated, and we go to the rules on judicial notice. Let's have some evidence here, because this is not something widely known in the community. Let me have my say, at which point he backed off and said there was no Batson. There was absolutely no evidence of it. Now, I was just defending myself at the time, and I'll admit I was a little hot because I thought it was improper. I don't think I did anything wrong. I stand here today and tell you I would do the same thing again. Yeah, but the question is a way not whether you did anything wrong. The only question in front of us is a purely sort of a triggering, do you get to the next step, where the judge gets to ask you why did you do it? Because getting to the next step is not at all a conclusion that your challenge was race-based. It's merely that the numbers or something in there raises enough of a suspicion that this might have happened, and it's far short of a proof that your judge says, okay, explain what was going on. And you don't think any explanation was proper at that point. I don't think so, not on that particular point. That was just a straight waiver. I had not challenged any minority. There was no history of it. Even after the second time when we do it, when we have the same sort of by chance, it turns out that Mr. Lopez is number four, and the effect of waiving has exactly the same consequence. So even after it happens the second time, there's not enough ground for asking you to explain? The court is asking me a question which set it up that I have an affirmative duty to strike somebody on a list in order to get someone further down the line. We're talking about alternates in a case that's not going to last more than two to three hours. And even if I would have exercised a preemptory challenge on the floor, defense would have had to exercise one, and we'd have had to lose two jurors to ever get to the last minority, Mr. Lopez, I believe it was, because he was number 32 on a blind draw that came out of the system. So I suppose that in this case, if you had exercised two preemptories at the outset and there were five more jurors in line who suffered, at least some of them suffered from the same defects apparent to the judge that the two struck jurors, and then you waived nonetheless and the judge could make an inference, see an inference that you had decided to forego preemptories on the white jurors who fell in, as I say, sort of subject to the same kind of otherwise objective characteristics. That might be enough, do you think, to create a prima facie case? No, I don't. Well, what is the more? much of a track record, and as my question to the beginning said, your response was, look, it's a normal response that one would give when you waive your preemptories. I'm willing to take the jury. That was your response. So the question is, how do we ever get past prima facie case when, in fact, a prosecutor, not you, we're not assuming anything in this case, is in fact manipulating the system? Do we have to rely on the judge to have a track record with that prosecutor? How does that work in an individualized case from a defense standpoint? Here counsel is relying on Judge McKibben's knowledge, judicial notice. As you say, that's not fair. So how in this struck jury system do you create the prima facie case as defendant when, in fact, what you're doing is actually striking the only minorities out of the jury pool? That's the end result. Not you, the prosecutor is. That was the end result. Right. Just because of the luck of the brine draw. I think the only way you can do it, in all honesty, is that there would have to be some type of statistical data kept as to the ethnic background of each and every juror and build up some status over time when you're talking about a waiver. Does the Arizona district – excuse me. Does the Nevada district court always use this struck jury system? Yes. This is – Judge Reed's is a little different, but the other three judges draw 28 for the primary pool, 1 through 28, 4 for alternates. And the last 12 standing, if it – well, the first 12 that are drawn minus preempts end up as the jury in the panel. Once they're passed for cause. Okay. If you were willing just to take the jury as it came to you, you – but you did exercise one preemptory? I did. So why did you exercise even the one? In this particular case, the guy, I believe, was a night worker and looked like he was kind of dozing off or not paying attention. A night worker. You think – that's to say you thought he was sleepy because he'd been working through the night? That was my impression at the time, just looking at him in a box. Okay. Now, obviously, I've asked you a question that would only be appropriate for the district judge to ask you if it were a prima facie case. Right. So that – whatever that answer produces or doesn't produce, I don't think is appropriately part of the prima facie case. That comes forward after a prima facie case is made. I believe that question was asked. I think it was. And I believe I gave an answer I just gave you. I know that's so. I think that was at a time when the district judge thought maybe he had a prima facie case. Thank you for your time. Thank you. Thank you. Why don't we give you a couple minutes for rebuttal? Just a couple of points, I think, discussed. But I'm just trying to point out to this Court that whether a prima facie case was made or not, once the judge asked him for a reason and once he responded, you get to Batson Step 3, which is the judge's ruling of whether it's credible. And once you get there, you can't go back and decide that there's a prima facie case. And that's the Supreme Court law under Hernandez, and that is the law in the First through the Tenth Circuits. I have not been able to find a circuit that will allow you to go back and consider whether there was a viable prima facie case after the judge has made its ruling on the prosecution's explanation. Even if we were to conclude that there's no prima facie case? Oh, even if you were to conclude there's no prima facie case because it's moot. It's once the judge rules, and this, like I say, is the Supreme Court in Hernandez, One through Ten Circuits, I think it's on page 7 of my reply brief. Yes, it is. All agree that you cannot back up to address a prima facie showing once the judge has asked the government why and the government has responded. The Court asked for a government response at EOR 61, and the government stated its answer on EOR 62, and it even acknowledged that the Court had ruled on Matson at EOR 64. So if you go to page 7 of the response, case law says, Supreme Court and First through Tenth Circuits, that you cannot go back and look at whether the prima facie case exists or not. And the district court can't either? If you send it back for retrial? No, no, no. In this case, what happened was it's not the law. He cannot go back at all also. He cannot go back. Once he's made his ruling, he can't go back and say, gee, there may have been a prima facie case. And lastly, I brought this up before, but U.S. v. Rios, Ruiz, I'm sorry, Alonzo, number 0350125, published case on February 11th, 2005, was an illegal reentry case, and they said, remanded because could not say judge would have imposed the same sentence under Booker. So there's two reasons here to remand this case. Thank you. Okay. Thank you very much. The case of the United States v. Esparza-Gonzalez is submitted for decision. Thank both counsels for arguments in both cases.
judges: D.W. Nelson, W. Fletcher, Fisher